**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

GARY THOMPSON                                                         PLAINTIFF

v.                                  No. 4:06CV00179 JLH

MARTIN MONTGOMERY, individually and as
Sheriff of Faulkner County                                           DEFENDANT

## OPINION AND ORDER

Gary Thompson, a former employee of the Faulkner County Sheriff's Department, brought this action against Martin Montgomery, individually and in his official capacity as Sheriff of Faulkner County. Thompson alleges that he was fired for exercising his right to free speech in violation of his rights under the First Amendment to the United States Constitution and under the Arkansas Constitution. Thompson seeks redress pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993 ("ACRA"), codified in Arkansas Code Annotated § 16-123-101 et seq. Montgomery has moved for summary judgment in his individual and official capacity. For the following reasons, this motion is granted in part and denied in part.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003).  When the moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(e)).  The non-moving party sustains this burden by showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.  In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment.  *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabuska v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)).  If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

## I.

Thompson worked for the Faulkner County Sheriff's Department.  In late 2004 or early 2005, he went to the home of a fellow employee, Scott Manning, to watch a football game.  While at Manning's home, Thompson told Manning, "Somebody told me that the Sheriff had used a credit card to purchase a swimming pool at Wal-Mart.  I don't know if it was a county credit card, but I wouldn't doubt it." Thompson had been told about the alleged purchase of the swimming pool about six to eight months earlier by his wife.

2

In October 2005, Thompson received a Notice of Termination from Montgomery.  The notice stated:

> [I]t has been determined that you disclosed false information about myself and another employee making personal purchases on a county credit card.  As stated in the affirmative duty policy, if you believed this to be true you should have reported this to the Prosecuting Attorney.  Instead, you chose to discuss this with other employees.  I am truly sorry and disappointed in your conduct.  Therefore, your appointment as an employee of the Faulkner County Sheriff's Department is hereby terminated.

The "affirmative duty policy" requires that all employees "shall immediately report" any personal observations of a fellow employee's conduct that is in violation of county policies or procedures and any information regarding illegal, immoral, or unethical conduct on the part of any county employee.

Thompson appealed his termination to the Faulkner County Grievance Committee, which held a hearing on the matter in November 2005.  At the grievance hearing, Montgomery testified that he fired Thompson for violating the affirmative duty policy.  He also testified that Thompson had lied by creating the story about Montgomery using a credit card to purchase a swimming pool.

Thompson admits that he violated the policy but denies that this was the reason for his termination.  Thompson contends that this reason is pretextual and that the real reason for his termination was his statement to Manning.  Thompson testified in his deposition that when Montgomery fired him, Montgomery told him that he was fired because of "what you said over the credit card."  Montgomery admitted in his deposition that he fired Thompson "for lying and failing to report what would have been criminal conduct on my behalf."  Thompson denies making any false statements about the matter.

Thompson further contends that around the time of the events in question a special prosecutor was investigating the misuse of county credit cards.  Thompson testified that allegations regarding

3

the misuse of county funds were the subject of newspaper articles and were a regular subject of discussion among employees of the sheriff's department.  Montgomery testified that at the time of Thompson's termination there was a public dispute about spending in the sheriff's office, including allegations of misuse of county credit cards, and that it "made quite a public splash."

Thompson has produced a document entitled Report to the Faulkner County Quorum Court. This report states that the Faulkner County Sheriff's Office fund disbursements for 2003 and 2004 were scrutinized in three special investigations.  The report concluded that Montgomery and certain employees of the sheriff's office used county credit cards inappropriately and otherwise made improper expenditures of county funds.  One of the recommendations of the report was that Montgomery should reimburse the county $3,561.

## II.

As noted above, Thompson brings claims under both 42 U.S.C. § 1983 and the ACRA. Because the ACRA may construed in accordance with § 1983, ARK. CODE ANN. § 16-123-105(c), Thompson's claims under both statutes are analyzed together below.

### A.      Protected Speech

Montgomery first argues that he is entitled to summary judgment because Thompson's statement to Manning was not protected.  First, Montgomery argues that Thompson's statement did not touch on a matter of public concern.  Second, Montgomery asserts that Thompson's statement was not the cause of his termination.  Finally, Montgomery argues that Thompson's speech is not protected because it was "purely job-related."

The rights of public employees under the First Amendment have been explained in *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563,

88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968), and *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75

L. Ed. 2d 708 (1983).  The Eighth Circuit has summarized *Pickering* and *Connick* as follows:

> Courts addressing claims by public employees who contend that they have been
> discharged for exercising their right to free speech must employ a two-step inquiry.
> *Dunn v. Carroll*, 40 F.3d 287, 291 (8th Cir. 1994).  First, the court must determine
> whether the speech may be described as "speech on a matter of public concern."
> [Citing *Connick*, 461 U.S. at 146, 103 S. Ct. at 1689.]  If so, the second step involves
> balancing the employee's right to free speech against the interests of the public
> employer. [Citations omitted.]  The focus is on striking "a balance between the
> interests of the [employee], as a citizen, in commenting on matters of public concern
> and the interests of the [public employer] in promoting the efficiency of the public
> services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S. Ct. at
> 1734.  These two questions are matters of law for the court to resolve.  *Dunn*, 40 F.3d
> at 291.

*Kincaid v. City of Blue Springs*, 64 F.3d 389, 395 (8th Cir. 1995); *see also Sexton v. Martin*, 210

F.3d 905, 910 (8th Cir. 2000).

The Eighth Circuit has further held, however, that if the government employer cannot

produce some evidence that the employee's speech disrupted the workplace, the court need not

proceed to the balancing stage.  *Gordon v. City of Kansas City, Mo.*, 241 F.3d 997, 1003 (8th Cir.

2001); *Belk v. City of Eldon*, 228 F.3d 872, 881 (8th Cir. 2000).  Because Montgomery has neither

argued that the interests of the sheriff's office outweighed Thompson's free speech interests nor

produced evidence that Thompson's statement to Manning disrupted the functioning of the sheriff's

office, this Court will address only the question of whether Thompson commented on a matter of

public concern.

"Matters of public concern include matters of political, social, and other concern to the

community." *Belk*, 228 F.3d at 878 (citing *Connick*, 461 U.S. at 147-48, 103 S. Ct. 1684).  "It is

clearly established that speech about the misuse or waste of public funds is generally of public

5

concern." *Schilcher v. Univ. of Ark.*, 387 F.3d 959, 963 (8th Cir. 2004). *See also Barnard v. Jackson County, Mo.*, 43 F.3d 1218, 1225 (8th Cir. 1995) ("Speech disclosing allegations of criminal activity allegedly committed by elected public officials and allegations of official misconduct by an incumbent elected official are matters occupying 'the highest rung of hierarchy of First Amendment values.'"). "Heightened public interest in a particular issue, while not dispositive, may also indicate that the issue is one of public concern." *Belk*, 228 F.3d at 878. If the speech was mostly intended to further the employee's private interests rather than to raise issues of public concern, however, the speech is not protected even if the public might have an interest in the topic. *Schilcher*, 387 F.3d at 963. The court must therefore analyze the content, form, and context of the speech to determine whether it related to a matter of public concern. *Id.*

Montgomery argues that Thompson's speech did not touch on a matter of public concern because Thompson merely told Manning that Montgomery had purchased a swimming pool with an unidentified credit card, and Thompson's suspicion that Montgomery used a county credit card does not render the statement protected. Thompson did not merely state that Montgomery purchased a pool with a credit card, however, he stated that he "wouldn't doubt" that the credit card was issued by the county. This statement was made in the context of a public scandal over the alleged misuse of county funds and county credit cards. Thompson testified that newspaper articles were written about it, and Montgomery testified that it "made quite a public splash." This evidence shows that the public had a "heightened interest" in the matter, as one would expect in a case of alleged misappropriation of public funds. Moreover, Montgomery does not argue that Thompson made the statement to advance his own personal interests. Thompson's statement to Manning clearly related to a matter of public concern.

Montgomery next contends that Thompson's statement to Manning was not the cause of Thompson's termination, as he was fired for his admitted violation of the county's affirmative duty policy.  This argument is merely a restatement of Montgomery's version of the facts.  As noted above, Thompson testified that Montgomery told him at the time of his termination that he was fired because of his statement to Manning, and Montgomery testified that Thompson was fired for "lying" about the alleged swimming pool purchase and for violating county policy.  Manning also testified that Montgomery "was pissed off" about Thompson's statement.  According to Manning, "[Montgomery] said it wasn't true.  I mean, that's why he was mad."  In light of this evidence, a jury could reasonably conclude that Thompson was fired for making an unflattering statement about Montgomery to Manning, not because he failed to make the statement to an appropriate authority under the affirmative duty policy.

Finally, Montgomery argues that Thompson's statement was not a protected form of speech because he was required to report Montgomery's suspected illegal activity pursuant to the affirmative duty policy, pointing out that a public employee's job-related speech is not protected.  *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1960, 164 L. Ed. 2d 689 (2006) (public employees making statements pursuant to their official duties are not speaking as citizens for First Amendment purposes).  The problem with this argument is that the parties agree that Thompson *did not* make the statement at issue pursuant to the affirmative duty policy, and Thompson's unrebutted testimony is that he made the statement while off-duty at a private party.  Because Thompson was not speaking pursuant to his duties as an employee of the sheriff's department, *Garcetti* does not apply.

Thompson engaged in a protected form of speech when he made his statement to Manning.  Montgomery's motion for summary judgment is denied as to this issue.

**B.**     **Due Process**

Montgomery next argues that he is entitled to summary judgment because Thompson received due process of law through the hearing before the County Grievance Committee.  Thus, according to Montgomery, Thompson was not denied "life, liberty, or property without due process of law."

This argument overlooks the distinction between substantive due process and procedural due process.  The procedural protections of the Due Process Clause guarantee only that there is a fair decision-making process before the government takes some action.  RONALD D. ROTUNDA & JOHN E. NOWAK, 2 TREATISE ON CONSTITUTIONAL LAW § 14.6, at 530 (3d ed. 1999).  The First Amendment's incorporation into the Fourteenth Amendment's Due Process Clause, however, means that the substantive protections of the First Amendment are now applicable against state actors. *Duncan v. Louisiana*, 391 U.S. 145, 148, 88 S. Ct. 1444, 1447, 20 L. Ed. 2d 491 (1968); *see also Brennan v. Stewart*, 834 F.2d 1248, 1255-56 (5th Cir. 1988).  The substantive protections provided by the First Amendment's incorporation are distinct from and not dependent on the procedural protections afforded by the Fourteenth Amendment's Due Process Clause.  *See Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986) (noting that, in addition to setting procedural minima for deprivations of life, liberty, or property, the Due Process Clause bars outright "certain government actions regardless of the fairness of the procedures used to implement them").  Thus, a person could receive all the procedural due process to which he is entitled under the Fourteenth Amendment, while still having his substantive due process rights under the First and Fourteenth Amendments violated.

Even assuming for purposes of this motion for summary judgment that Thompson was

afforded procedural due process by the County Grievance Committee, he is still entitled to the substantive right of free speech afforded by the First Amendment. Although Montgomery argues that the Court should defer to the County Grievance Committee's decision, this argument has no merit. No reason appears as to why a federal district court should defer to the Faulkner County Grievance Committee on whether Thompson's termination violated the First Amendment; nor is it apparent how a decision of that body could prevent Thompson from having the issues tried by a jury, as he is entitled to do under the Seventh Amendment.

Montgomery's motion for summary judgment is denied as to this issue.

## C.     Faulkner County's Liability

As noted above, Thompson brought this action against Montgomery in both his official and individual capacities. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Thompson's suit against Montgomery in his official capacity as Sheriff of Faulkner County is therefore a suit against the county. Montgomery argues, however, that Faulkner County cannot be held liable because Thompson has not proven that his termination was the result of an unconstitutional county policy.

Forty-two U.S.C. § 1983 provides that any "person" acting under color of state law who subjects another to the deprivation of constitutional rights shall be liable to the injured party. A local governmental body such as a county is considered a "person" subject to § 1983 liability. *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 832 (8th Cir. 2005). A county may not be held vicariously liable, however, for the unconstitutional acts of employees. *See, e.g.*, *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A county may be held liable only for constitutional violations which

9

result from a policy or custom of the county.  *E.g.*, *Scheeler*, 402 F.3d at 832; *Mettler*, 165 F.3d at 1204.

"[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler*, 165 F.3d at 1204.  A single decision may reflect an official county policy "provided that a deliberate choice to follow a course of action was made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Buzek v. County of Saunders*, 972 F.2d 992, 996 (8th Cir. 1992).  In *Buzek,* a former deputy sheriff, Warren Buzek, brought a § 1983 action against the county and the sheriff, Ronald Poskochil, alleging that he was discharged for exercising his right to free speech. *Id.* at 993-94.  Affirming the judgment of the district court, the Eighth Circuit wrote:

> There was sufficient evidence to support the jury's finding that the County was liable
> . . . .  Poskochil's broad discretion to set policy as the County's elected sheriff, and
> the County Attorney's testimony that Poskochil had exclusive authority to fire Buzek,
> adequately support the jury's determination that Poskochil possessed the
> discretionary, policymaking authority necessary to hold the County liable for this
> decision. . . .

*Id.* at 996.

Montgomery testified that, as the elected Sheriff of Faulkner County, he has the authority to hire, discipline, and terminate all employees who work for his department.  In his deposition, Montgomery stated, "I ultimately hire or terminate all employees."   A jury could reasonably conclude from this testimony that Montgomery possessed the discretionary authority necessary to hold Faulkner County liable for his decision to terminate Thompson.

Montgomery's motion for summary judgment in his official capacity is denied.

10

D.      **Qualified Immunity**

The Eighth Circuit has explained the qualified immunity doctrine as follows:

Under the doctrine of qualified immunity, state actors are protected from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (internal quotations omitted); *McCaslin v. Wilkins,* 183 F.3d 775, 778 (8th Cir. 1999). The qualified immunity inquiry is a two-step process.  First, this Court must ascertain whether the plaintiffs have asserted a violation of a constitutional or statutory right. *See Munz v. Michael,* 28 F.3d 795, 799 (8th Cir. 1994) (citing *Beck v. Schwartz,* 992 F.2d 870, 871 (8th Cir. 1993) (per curiam)). Second, we must determine whether that constitutional right was clearly established at the time that the plaintiffs were discharged. *See Munz,* 28 F.3d at 799. "This court has . . . taken a broad view of what constitutes 'clearly established law' for the purposes of a qualified immunity inquiry . . . ." *Boswell v. Sherburne County,* 849 F.2d 1117, 1121 (8th Cir. 1988), *cert. denied,* 488 U.S. 1010, 109 S. Ct. 796, 102 L. Ed. 2d 787 (1989). "For a right to be deemed clearly established, the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is Ed. doing violates that right.'" *Buckley v. Rogerson,* 133 F.3d 1125, 1128 (8th Cir. 1998) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).  However, "[i]t is only necessary that the unlawfulness of the official's act [be] apparent in view of pre-existing law." *Hall v. Lombardi,* 996 F.2d 954, 958 (1993), *cert. denied,* 510 U.S. 1047, 114 S. Ct. 698, 126 L. Ed. 2d 665 (1994). Therefore, if the law claimed to have been violated was clearly established, the qualified immunity defense ordinarily fails, "since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818-19, 102 S. Ct. 2727.

*Sexton,* 210 F.3d at 909-10.

Montgomery contends that he is entitled to qualified immunity because "[t]here is simply no law, clearly established or otherwise, the [sic] prohibits the termination of a public employee for his failure to comply with a mandatory affirmative reporting duty."   As discussed above, whether Thompson was fired for his failure to comply with the affirmative duty policy or for making a protected statement to Manning is a disputed issue of fact.  A public employee's constitutional right to comment on an official's suspected misuse of public funds is clearly established.  *See Belk*, 228

11

F.3d at 876-79, 882-83 (defendants were not entitled to qualified immunity where plaintiff claimed that she was fired in retaliation for making statements concerning the alleged wrongful payment of benefits to another public employee).

Montgomery is not entitled to qualified immunity, and his motion for summary judgment is denied as to this issue.

**E.      Compensatory and Punitive Damages**

Finally, Montgomery argues that Thompson's claims for compensatory and punitive damages should be dismissed.

As to Thompson's claim for compensatory damages, Montgomery cites *Thompson v. Adams*, 268 F.3d 609 (8th Cir. 2001), for the proposition that the First Amendment provides "the guarantee that protected speech may not be inhibited, or 'chilled,' because of the acts or threatened acts of another," and asserts that Thompson "can offer no evidence of any actual or potential inhibitory effect on his speech consequent to his termination." Thus, Montgomery argues, "[Thompson] lacks the requisite injury to bring such a claim. Simply stated, [Thompson] has offered no evidence of any injury to his free speech rights occasioned by the mere fact of his termination . . . ."

This argument ignores any financial or other damages suffered by Thompson due to the allegedly unconstitutional acts of Montgomery in terminating Thompson's employment, damages for which 42 U.S.C. § 1983 provides a cause of action. *See, e.g.*, *Coleman v. Rahija*, 114 F.3d 778, 786 (8th Cir. 1997) (compensatory damages in § 1983 action "may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering"). Montgomery's motion for summary judgment is denied as to the issue of compensatory damages.

As to Thompson's claim for punitive damages, Montgomery argues that recovery of punitive damages against local governments and officials is prohibited.[1]  Punitive damages may not be recovered from a county, but may be awarded against an individual defendant.  *Davis v. Fulton County, Ark.*, 884 F. Supp. 1245, 1259 n.19 (E.D. Ark. 1995).  Montgomery's motion for summary judgment on the issue of punitive damages is therefore granted as to Montgomery in his official capacity but denied as to Montgomery in his individual capacity.

**CONCLUSION**

For the reasons stated above, Montgomery's motion for summary judgment is granted as to Thompson's claim for punitive damages against Montgomery in his official capacity, but denied as to all other issues.  Document # 22.

IT IS SO ORDERED this 28th day of June, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[1]  Montgomery cites *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981), for this proposition.  The Supreme Court actually held in that case that municipalities are immune from punitive damages under § 1983.  *Id.* at 272.  Although the suit involved the Mayor of Newport and the other six members of the City Council individually, the Supreme Court expressly stated that those claims were not before the Court and were not considered.  *See id.* at 250 n.2, 254 n.7.